1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD BALDINE,

11            Petitioner,                    No. CIV S-03-0533 DFL DAD P

12        vs.

13   CAREY, et al.,

14            Respondents.              FINDINGS & RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges the judgment of conviction

18   entered against him in the San Joaquin County Superior Court on charges of transportation of

19   marijuana and possession of marijuana for sale.  He seeks relief on the grounds that: (1) jury

20   instruction error violated his right to due process; (2) his right to confront the witnesses against

21   him was violated when the jurors conducted an experiment during their deliberations; (3) his

22   right to a fair trial was violated when the trial court denied his motion for new trial on the ground

23   of juror misconduct; (4) he received ineffective assistance of trial and appellate counsel; and (5)

24   the prosecution violated his right to due process when it mishandled crucial evidence necessary

25   to prove his innocence.  Upon careful consideration of the record and the applicable law, the

26   undersigned will recommend that petitioner's application for habeas corpus relief be denied.

1

## PROCEDURAL AND FACTUAL BACKGROUND[1]

A jury convicted defendant Richard John Baldine of transportation of marijuana (Health & Saf. Code § 11360, subd. (a)) and possession of marijuana for sale (Health & Saf. Code, § 11359). In a bifurcated proceeding, the jury found true an attempted robbery strike allegation (Pen Code, §§ 664/211, 667, subds. (b) - (I), 1170.12) and two prison term allegations (Pen. Code, § 667.5, subd. (b)). Defendant was sentenced to state prison for eight years.

* * *

Prosecution case-in-chief

On April 3, 2000, Tracy Police Officer Tomas Ribota conducted a traffic stop of Jennifer Pesout for a Vehicle Code violation. Defendant was a passenger in Pesout's car. When it was discovered that Pesout did not have a valid driver's license and had an outstanding warrant, she was arrested. Because defendant's driver's license had expired, and no other driver was available, Ribota decided to impound the car. Defendant was asked to step out of the car and an inventory search began.

Officer Ribota first searched the front seats. He found doughnuts on the floor, a knife under the seat, and a portable radio scanner between the two front seats. The scanner was not on, but Ribota turned it on to see if it worked and found that it did. The scanner received the Tracy Police channel. Ribota placed these and other items on top of the car. Defendant, who was standing about 25 feet away, asked for the doughnuts, the scanner, and a set of keys.

The search progressed to the back seat, where Officer Ribota located some plastic jugs of water and a man's black leather jacket. He searched the jacket for valuables and found a large clear plastic bag containing four small bags of suspected marijuana. The jacket also contained a small ounce scale. As Ribota was stuffing the suspected marijuana and scale back into the jacket pockets, defendant said, "Throw that jacket back here." Ribota asked, "This jacket?" and defendant replied, "Yeah, it's mine." Ribota put down the jacket, went over to defendant, and asked him "how much weed" was in the jacket. Defendant said that there was no marijuana in the jacket. Based on the quantity of marijuana and the presence of the scale and scanner, Ribota arrested defendant for possession of marijuana for sale. Laboratory analysis of the four

/////

---

[1] The following summary is drawn from the December 20, 2001, opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 2-4, filed on May 10, 2004, as exhibit D to respondents' answer. The Court of Appeal's opinion was partially published. See People v. Baldine, 94 Cal. App. 4th 773 (2001).

baggies revealed that each baggie contained between 25 and 28 grams of substance containing marijuana.

Defense

Defendant testified that he was a neighbor of Pesout and had never been in her car before. He was not wearing a black leather jacket. Defendant had in his possession the doughnuts, a pack of tobacco containing a $5 bill, a knife, and the scanner.

The scanner was not operational. It "[n]eeded to be charged or needed batteries." When turned on, it "would come on for a second then just completely shut off."

Defendant denied ownership of the jacket. However, he admitted telling Officer Ribota, "I guess you could say it's mine."

Defendant admitted a 1993 felony conviction for possession of a dangerous weapon.

Petitioner filed a timely appeal in the California Court of Appeal for the Third Appellate District, in which he claimed that: (1) the jury was erroneously instructed with CALJIC No. 17.41; (2) his motion for new trial based on juror misconduct was erroneously denied; and (3) juror misconduct violated his Sixth Amendment right to confront the witnesses against him. (Answer, Ex. D at 2.) Petitioner's judgment of conviction was affirmed in its entirety in a reasoned decision dated December 20, 2001, which was certified for partial publication. (Answer, Ex. D.) On January 29, 2002, petitioner raised the same claims in a petition for review filed in the California Supreme Court. (Answer, Ex. E.) That petition was summarily denied by order dated March 13, 2002. (Answer, Ex. F.)

On March 17, 2003, petitioner filed a petition for writ of habeas corpus in the California Superior Court, in which he claimed that he received ineffective assistance of trial and appellate counsel, and that the prosecution committed misconduct when crucial exculpatory evidence was mishandled. (Answer, Ex. G.) The California Superior Court denied that petition on the merits by order dated April 14, 2003. (Answer, Ex. H.) Petitioner raised the same claims in a May 2, 2003, petition for writ of habeas corpus filed in the California Court of Appeal. (Answer, Ex. I.) That petition was summarily denied by order dated May 15, 2003. (Answer,

1  Ex. J.)  Petitioner raised the identical claims in a petition for writ of habeas corpus filed in the

2  California Supreme Court.  (Answer, Ex. K.)  That petition was summarily denied by order dated

3  February 4, 2004.  (Answer, Ex. L.)

4                                                    ANALYSIS

5  I.  Standards of Review Applicable to Habeas Corpus Claims

6              A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of

7  some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860,

8  861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v.

9  Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the

10 interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);

11 Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas

12 corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377

13 (1972).

14             This action is governed by the Antiterrorism and Effective Death Penalty Act of

15 1996 ("AEDPA").  See Lindh v.Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d

16 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting

17 habeas corpus relief:

18             An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall
19           not be granted with respect to any claim that was adjudicated on
             the merits in State court proceedings unless the adjudication of the
20           claim -

21             (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
22           determined by the Supreme Court of the United States; or

23             (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
24           State court proceeding.

25 28 U.S.C. § 2254(d).  See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

26 Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

                                                          4

1    The court looks to the last reasoned state court decision as the basis for the state

2    court judgment.  Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state

3    court reaches a decision on the merits but provides no reasoning to support its conclusion, a

4    federal habeas court independently reviews the record to determine whether habeas corpus relief

5    is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

6    Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

7    reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

8    AEDPA's deferential standard does not apply and a federal habeas court must review the claim

9    de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

10   1167 (9th Cir. 2002).

11   II.  Petitioner's Claims

12        A.  Jury Instruction Error

13        Over a defense objection, petitioner's jury was instructed with CALJIC No.

14   17.41.1, which provides as follows:

15        The integrity of a trial requires that jurors, at all times during their
             deliberations, conduct themselves as required by these instructions.
16        Accordingly, should it occur that any juror refuses to deliberate or
             expresses an intention to disregard the law or to decide the case
17        based on [penalty or punishment, or] any [other] improper basis, it
             is the obligation of the other jurors to immediately advise the Court
18        of the situation.

19   (Clerk's Transcript on Appeal (CT) at 208.)  Petitioner claims that the giving of this jury

20   instruction violated his First Amendment right to freedom of speech and his Sixth Amendment

21   right to a trial by jury.  Specifically, petitioner contends that CALJIC No. 17.41.1 "impinged

22   upon" the jurors' right to engage in jury nullification, had a "powerful chilling effect on free

23   expression during deliberations," and intrudes upon the privacy of jury deliberations.  (Pet. at 5,

24   5(a); Traverse at 9.)  Petitioner also argues that the instruction contradicts CALJIC No. 17.40,

25   also given at petitioner's trial, which instructed the jury that "the People and the defendant are

26   entitled to the individual opinion of each juror."  (CT at 2-3.) Petitioner argues that the error in

1   giving this jury instruction "must be deemed a structural error" which is not subject to harmless

2   error analysis.  (Pet. at 5(a).)

3            In the unpublished portion of its opinion, the California Court of Appeal rejected

4   petitioner's argument that the trial court erred when it instructed the jury with CALJIC No.

5   17.41.1.  The state appellate court explained its reasoning as follows:

> Defendant contends the trial court erred reversibly by instructing
> the jury with CALJIC No. 17.41.1 (jury misconduct).  He argues
> CALJIC No. 17.41.1 improperly infringes on the right of jurors to
> freely deliberate, violates their First Amendment right to free
> expression, threatens the jury's role as a check on the court,
> impinges upon the practice of jury nullification, impermissibly
> delves into the jurors' thought processes, violates his right to a
> verdict produced by free and frank deliberation, and chills the
> independent and impartial judgment of each juror.  He asserts the
> error is "structural," and thus requires reversal per se.  We are not
> persuaded.

> Even if we were to assume, solely for the sake of argument, that
> giving CALJIC No. 17.41.1 was federal constitutional error, the
> error would not be reversible per se.  In People v. Molina (2000)
> 82 Cal.App.4th 1329 (Molina), this court held that any error in
> giving CALJIC No. 17.41.1 is not reversible per se, but is subject
> to harmless error analysis under the standard of Chapman v.
> California (1967) 386 U.S. 18 [17 L.Ed.2d 705].  (Molina, supra, at
> p. 1335.)

> In this case, the jury was escorted to the deliberation room on the
> afternoon of November 9, 2000, following closing arguments and
> final instructions.  The court adjourned for the day at 4:15 p.m.
> Following a holiday weekend, deliberations resumed at 9:00 a.m.
> on November 13, 2000.  At 11:30 a.m., the jury indicated that a
> verdict had been reached.  "The jury did not communicate with the
> court during its deliberations.  We will not infer that the jury
> instruction had any impact prejudicing defendant.  We reject
> defendant's speculative assumption that the instruction had a
> chilling effect on the jurors' deliberations, inhibiting the kind of
> free expression and interaction among jurors that is so important to

22   /////

23   /////

24   /////

25   /////

26   /////

1  the deliberative process.  There is no warrant for that view on this
   record."  (<u>Molina</u>, <u>supra</u>, 82 Cal.App.4th at p. 1336.)

2

3  (Opinion at 4-5.)[2]

4          Petitioner's claim for relief is foreclosed by the decision of the Ninth Circuit

5  Court of Appeals in <u>Brewer v. Hall</u>, 378 F.3d 952, 955-57 (9th Cir. 2004).  In <u>Brewer</u>, the Ninth

6  Circuit held that, regardless of the "constitutional merits" of CALJIC No. 17.41.1, habeas corpus

7  relief was unavailable on the identical claim presented by petitioner here because there is "no

8  Supreme Court precedent clearly establishing" that use of this jury instruction violates a

9  defendant's constitutional rights.  <u>Id.</u> at 955-56.  Here, as in <u>Brewer</u>, petitioner "has pointed to no

10 Supreme Court precedent clearly establishing that CALJIC 17.41.1--either on its face or as

11 applied to the facts of his case--violated his constitutional rights."  <u>Id.</u> at 957.  Thus, the state

12 court's rejection of petitioner's jury instruction claim was not contrary to or an unreasonable

13 application of clearly established federal law as determined by the Supreme Court.  28 U.S.C. §

14 2254(d).

15         Even if the trial court erred in instructing the jury with CALJIC No. 17.41.1, the

16 error was harmless under the circumstances of this case.  <u>See</u> <u>Brecht v. Abrahamson</u>, 507 U.S.

17 619, 623 (1993) (holding that a federal court may not grant habeas relief for trial errors without a

18 showing of actual prejudice, defined as a "substantial and injurious effect or influence in

19 determining the jury's verdict").  As noted by the California Court of Appeal, the jury in

20 petitioner's case quickly reached a verdict without apparent difficulty.  Petitioner's jurors did not

21 ask any questions or communicate with the court in any way.  There is simply no indication that

22 the giving of CALJIC No. 17.41.1 in this case chilled the jurors' exercise of free speech or

23 prevented free and full deliberations.  The conclusion of the state appellate court that a finding of

24

25         [2]  After the state appellate court issued this decision, the California California Supreme
   Court, using its supervisory authority over the lower state courts, discontinued the use of CALJIC
   No. 17.41.1 because of its "potential" to intrude on jury deliberations.  <u>People v. Engelman</u>, 28

26 Cal. 4th 436, 440 (2002).

1    prejudice under the circumstances of this case would be merely "speculative" is not

2    unreasonable.  Accordingly, petitioner is not entitled to relief on this claim.

3         B.  Juror Misconduct/Trial Court Error

4              Petitioner's next two claims concern the actions of his jurors when, during

5    deliberations, they turned on the radio scanner to see if it worked.  Petitioner claims that this

6    "experiment" constituted juror misconduct which violated his right to a fair trial.  Petitioner also

7    claims that the trial court erred when it denied his motion for new trial on this basis.  In the

8    published portion of its opinion, the California Court of Appeal explained the background to this

9    claim and its resolution as follows:

10             Background

11             Defendant's new trial motion alleged the jury committed
                 misconduct during deliberations by conducting an unauthorized
12             experiment.  The motion was supported by defendant's trial
                 counsel's declaration that, after trial, he interviewed a juror who
13             disclosed that the jury decided to turn on the scanner and check the
                 condition of the battery.  According to the juror, the scanner
14             worked well and there was nothing wrong with the battery.  The
                 jury concluded that, since defendant's testimony was that the
15             scanner was not working, his testimony as a whole was not
                 credible.
16
                 After hearing argument, the trial court denied the new trial motion.
17             The court noted that in People v. Cumpian (1991) 1 Cal.App.4th
                 307 [1 Cal.Rptr.2d 861], the "jury took a duffel bag that was
18             involved in the evidence and tried putting it over their shoulder and
                 so forth because it was connected to the defendant's testimony.
19             There the court pointed out the jury's re-enactment of that evidence
                 did not constitute the receipt of evidence out of court but was
20             merely an experiment directed at proffered evidence.  To prohibit
                 jurors from analyzing exhibits in the light of proffered testimony
21             would obviate any reason for sending physical evidence in the jury
                 room in the first instance.  [¶] As the jurors['] experiment was
22             based on evidence received in court, there was no juror
                 misconduct.  And I think that basically is the precedent for this
23             particular case because it-that scanner was received in evidence.
                 And obviously there would be no point in giving the jury evidence
24             unless they do have an opportunity to examine and look at it
                 closely.   And so we keep telling them obviously in every trial
25             we're going to let them see the evidence and let them handle it and
                 look it over and see whether or not the nature of the evidence is
26             consistent with either the People's testimony or the defense

8

1   testimony and so forth.  [¶] I don't think that is the type of
    experiment that is precluded by the court and would serve as a
2   basis for the granting of a new trial.  So regardless, even assuming
    that all the statement in the affidavit is correct, I don't believe that's
3   grounds for a new trial."

4   Analysis

5   This court recently set forth the controlling principles as follows:
    "'[N]ot every experiment constitutes jury misconduct." [J]urors
6   must be given enough latitude in their deliberations to permit them
    to use common experiences and illustrations in reaching their
7   verdicts. [Citations.]"  ( United States v. Avery (6th Cir. 1983) 717
    F.2d 1020, 1026.)' [Citation.]  'It is a fundamental rule that all
8   evidence shall be taken in open court and that each party to a
    controversy shall have knowledge of, and thus be enabled to meet
9   and answer, any evidence brought against him.  It is this
    fundamental rule which is to govern the use of ... exhibits by the
10  jury.  They may use the exhibit according to its nature to aid them
    in weighing the evidence which has been given and in reaching a
11  conclusion upon a controverted matter.  They may carry out
    experiments within the lines of offered evidence, but if their
12  experiments shall invade new fields and they shall be influenced in
    their verdict by discoveries from such experiments which will not
13  fall fairly within the scope and purview of the evidence, then,
    manifestly, the jury has been itself taking evidence without the
14  knowledge of either party, evidence which it is not possible for the
    party injured to meet, answer, or explain.' [Citation.]"  ( People v.
15  Bogle (1995) 41 Cal.App.4th 770, 778-779 [48 Cal.Rptr.2d 739]
    (Bogle); see Higgins v. L. A. Gas & Electric Co. (1911) 159 Cal.
16  651, 656-657 [115 P. 313].)

17  Defendant testified that the scanner was not working, because it
    "[n]eeded to be charged or needed batteries"; when turned on, it
18  "would come on for a second then just completely shut off."
    During deliberations, the jury turned on the scanner but it did not
19  "just completely shut off."  Rather, it "worked well," and "there
    was nothing wrong with the battery."
20
    By turning on the scanner and observing its operation, the jury
21  merely "use[d]" it "'according to its nature to aid them in weighing
    the evidence which has been given and in reaching a conclusion
22  upon a controverted matter.'"  (Bogle, supra, 41 Cal.App.4th at p.
    778.)  Turning the switch that energized the scanner in this case
23  closely resembles turning the key that unlocked the safe in Bogle.
    The act was squarely "'within the lines of offered evidence'" and
24  did not "'invade'" any "'new fields.'"  ( Ibid., italics omitted.)  Nor
    did the jury's experiment lead to any "'discoveries' " that did not
25  "'fall fairly within the scope and purview of the evidence.'"  (Ibid.)
    Rather, the jurors' "discovery" that the scanner "worked" was
26  squarely within the scope of defendant's claim that it did not work.

9

Defendant's complaint is not that the experiment invaded a new field, but that he had no opportunity to plow new ground in response to the experiment.  Thus, he had no chance to "show[] that the scanner had some malfunction which explained why sometimes it worked only for 'a second.'"  Nor did he have a chance to "explore the chain of custody more assiduously to see if there was a possibility that the scanner was in a different condition" than it had been when seized approximately seven months previously.  The experiment itself had not yielded evidence on either of these points.

Defendant does not contend the scanner in fact had a "malfunction which explained why sometimes it worked only for 'a second.'"  Nor does this silent record permit such a contention.   Whether his inability to pursue the issue was prejudicial can only be determined on habeas corpus.  (See People v. Lucero (2000) 23 Cal.4th 692, 728-729 [97 Cal.Rptr.2d 871, 3 P.3d 248].)

Chain-of-custody issues are present whenever physical evidence capable of submission to the jury is introduced at trial.  Objections related to the chain of custody are waived if not timely asserted.  (Evid. Code, § 353; People v. Barajas (1978) 81 Cal.App.3d 999, 1011 [147 Cal.Rptr. 195].)  Defendant's argument would create an end run around this rule whenever deliberating jurors manipulate the physical evidence before them.

Defendant contends the jury's consideration of evidence adduced by its experiment violated his Sixth Amendment right to confront the evidence against him and, because this error was structural in nature, reversal is required.  We are not persuaded.

"In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel."  Turner v. Louisiana (1965) 379 U.S. 466, 472-473 [85 S.Ct. 546, 550, 13 L.Ed.2d 424, 429].)  When a jury considers extraneous facts not introduced in evidence, "'a defendant has effectively lost the rights of confrontation, cross-examination, and the assistance of counsel with regard to jury consideration of the extraneous evidence.'"  (Hughes v. Borg (9th Cir. 1990) 898 F.2d 695, 700, quoting Gibson v. Clanon, (9th Cir. 1980) 633 F.2d 851, 854.)

However, where physical evidence admitted at trial is used by the jury "according to its nature," and any experiments are confined "within the scope and purview of the evidence" (Bogle, supra, 41 Cal.App.4th at p. 778), the jury does not receive "extraneous facts not introduced in evidence" within the meaning of Hughes v. Borg, supra, 898 F.2d 695 at page 700.  Here, the jury only considered material that was in evidence, that defendant had an opportunity to

10

1    confront, and that could properly be viewed.  Defendant's Sixth
      Amendment claim has no merit.[3]
2

3  People v. Baldine, 94 Cal. App. 4th 773, 777-80 (2001).

4           Under the Sixth Amendment to the United States Constitution, petitioner has the

5  right to be tried by an impartial jury and to confront and cross-examine witnesses who testify

6  against him.  Grotemeyer v. Hickman, 393 F.3d 871, 876 -877 (9th Cir. 2004) (citing Irvin v.

7  Dowd, 366 U.S. 717, 722 (1961) and Pennsylvania v. Ritchie, 480 U.S. 39, 51 (1987)).

8  Moreover, under Turner v. Louisiana, 379 U.S. 466 (1965), petitioner is entitled "to a jury that

9  reaches a verdict on the basis of evidence produced at trial, exclusive of 'extrinsic evidence.'"

10  Grotemeyer, 393 F.3d at 877.  In conducting their deliberations, "[j]urors have a duty to consider

11  only the evidence which is presented to them in open court."  Bayramoglu v. Estelle, 806 F.2d

12  880, 887 (9th Cir. 1986) (citing Turner, 379 U.S. at 472-73).  "Evidence not presented at trial,

13  acquired through out-of-court experiments or otherwise, is deemed 'extrinsic.'"  United States v.

14  Navarro-Garcia, 926 F.2d 818, 821 (9th Cir. 1991).  As explained in Gibson v. Clanon, 633 F.2d

15  851, 854 (9th Cir. 1980):

16           When a jury considers facts that have not been introduced in
              evidence, a defendant has effectively lost the rights of
17            confrontation, cross-examination, and the assistance of counsel
              with regard to jury consideration of the extraneous evidence.  In
18            one sense the violation may be more serious than where these
              rights are denied at some other stage of the proceedings because
19            the defendant may have no idea what new evidence has been
              considered.  It is impossible to offer evidence to rebut it, to offer a
20            curative instruction, to discuss its significance in argument to the
              jury, or to take other tactical steps that might ameliorate its impact.
21  /////

22  /////

23

24         [3]  The confrontation clause requires that defendants be afforded an adequate opportunity
    to confront the evidence against them. (e.g., Alvarado v. Superior Court (2000) 23 Cal. 4th 1121,
25  1148 [99 Cal. Rptr. 2d 149, 5 P.3d 203].)  Although the jury's experiment may have taken
    defendant by surprise, he was not without an opportunity to ascertain the scanner's working
26  condition during the evidentiary portion of the trial.

1    "Juror misconduct typically occurs when a member of the jury has introduced into

2  its deliberations matter which was not in evidence or in the instructions."  Thompson v. Borg, 74

3  F.3d 1571, 1574 (9th Cir. 1996) (quoting Marino v. Vasquez, 812 F.2d 499, 504 (9th Cir.1987)).

4  Nonetheless, a jury is permitted to examine evidence which was admitted at trial.  United States

5  v. Rincon, 28 F.3d 921, 926-27 (9th Cir. 1994).  See also United States  v. Beach, 296 F.2d 153,

6  159 (4th Cir. 1961) (noting "the rule that 'the mere making of a more critical examination of an

7  exhibit than was made during the trial is not objectionable.'").

8        The California Court of Appeal's conclusion that the jury's turning on of the

9  scanner that had been admitted into evidence was not improper is not contrary to or an

10  unreasonable application of clearly established federal law, nor was it based on an unreasonable

11  determination of the facts in light of the evidence presented in this case.  This case does not

12  involve a juror conducting an experiment on an item not received in evidence.  Cf. Marino, 812

13  F.2d at 504 (juror looking at her ex-husband's gun to see how hard you had to pull the trigger to

14  shoot it constituted extrinsic evidence); Jennings v. Oku, 677 F.Supp. 1061, 1062 (D. Hawaii

15  1988) (misconduct where the entire jury left the jury room and conducted an experiment on the

16  foreman's car to resolve how the defendant's fingerprint could have been found on the door of

17  the car); Durr v. Cook, 589 F.2d 891 (5th Cir. 1979) (jury foreman improperly engaged in an

18  out-of-court experiment during the course of his deliberations where he went to a car dealership,

19  asked to look at a pickup truck, and once in the truck, made certain twisting movements in an

20  apparent attempt to test the petitioner's self-defense explanation).  Nor did the jurors conduct any

21  independent research, see e.g., Gibson, 633 F.2d at 855 (jurors independently obtained evidence

22  from medical encyclopedia regarding rarity of defendant's blood type after judge ruled such

23  evidence inadmissible), or bring extraneous documents to the deliberations.  See United States v.

24  Littlefield, 752 F.2d 1429, 1432 (9th Cir. 1985) (jurors bringing news article about tax fraud

25  sentences to deliberations in a tax fraud case deemed extrinsic evidence); United States v.

26  Vasquez, 597 F.2d 192, 193 (9th Cir. 1979) (jurors reading a court file containing inadmissible

1  evidence constituted consideration of extrinsic evidence).  Rather, petitioner's jurors merely

2  examined evidence introduced in this case to determine whether petitioner's statements regarding

3  the evidence were true.  This does not constitute misconduct.  See e.g., Porous Media Corp. v.

4  Pall Corp., 110 F.3d 1329, 1341 (8th Cir. 1997) (jurors testing the strength of filters admitted

5  into evidence was not improper because the experiment was "merely part of the expected process

6  of scrutinizing the evidence as part of its deliberations"); Banghart v. Origoverken, A.B., 49 F.3d

7  1302, 1306-07 (8th Cir. 1995) (jury did not consider "extraneous evidence" in products liability

8  action arising from alcohol stove explosion when, during deliberations, jurors dropped toothpicks

9  and wooden matches that were not entered into evidence into stove which had been admitted into

10  evidence to test validity of plaintiff's expert's theory of how explosion occurred; rather, jurors

11  were merely testing truth of statements made concerning stove design); Taylor v. Reo Motors,

12  Inc., 275 F.2d 699, 705 (10th Cir. 1960) (court rejected plaintiff's claim of jury misconduct

13  where jury dismantled and reassembled a trial exhibit using pocket knives, nail clippers and other

14  pocket tools to test the validity of certain trial testimony, reasoning that "[i]f the experiment or

15  demonstration was conducted by the jury for the purpose of testing the truth of the statements

16  made concerning the functioning of the heat exchanger, it was proper").

17       Cases finding juror misconduct due to improper experiments typically involve

18  either a situation in which a jury conducted an experiment outside of the presence of the other

19  jurors and reported the results to those jurors, or a situation where the jurors considered physical

20  evidence which was not admitted at trial.  In the present case, the alleged jury misconduct does

21  not fall into either of these categories.  As noted by the California Court of Appeal, the jury in

22  petitioner's case merely used the scanner "according to its nature to aid them in weighing the

23  evidence and reaching a conclusion upon a controverted matter."  (Opinion at 7.)  The jury was

24  entitled to do this.  As the court stated in Grotemeyer, "[t]he Sixth Amendment entitles a

25  defendant to an "impartial" jury, not to an ignorant one."  393 F.3d at 879.

26  /////

1    Petitioner has cited no case, and this court has found none, in which the United

2    States Supreme Court has suggested that the handling of admitted evidence such as that engaged

3    in by petitioner's jury amounts to a violation of petitioner's right of confrontation, his right to an

4    impartial jury, or any other constitutional right.  Further, as noted by the state appellate court,

5    petitioner was not deprived the opportunity to demonstrate that the police scanner was defective.

6    He could have conducted his own demonstration at trial, but chose not to do so.

7    For all of these reasons, petitioner is not entitled to relief on his claim that his

8    constitutional rights were violated by the jurors' "experiment" on the police scanner nor on his

9    claim that the trial court erred in denying his motion for new trial on the ground of jury

10   misconduct.

11   C.  Ineffective Assistance of Counsel

12   Petitioner claims that he received ineffective assistance of trial and appellate

13   counsel.  After setting forth the applicable legal principles, the court will evaluate these claims in

14   turn below.

15   1.  Legal Standards

16   The Sixth Amendment guarantees the effective assistance of counsel.  The United

17   States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

18   Strickland v. Washington, 466 U.S. 668 (1984).  To support a claim of ineffective assistance of

19   counsel, a petitioner must first show that, considering all the circumstances, counsel's

20   performance fell below an objective standard of reasonableness.  See Strickland, 466 U.S. at

21   687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

22   result of reasonable professional judgment, the court must determine whether, in light of all the

23   circumstances, the identified acts or omissions were outside the wide range of professionally

24   competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

25   petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

26   466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

14

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at

694. A reasonable probability is "a probability sufficient to undermine confidence in the

outcome." Id. See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

(9th Cir. 2000). A reviewing court "need not determine whether counsel's performance was

deficient before examining the prejudice suffered by the defendant as a result of the alleged

deficiencies . . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of

sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

(9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In assessing an ineffective assistance of counsel claim "[t]here is a strong

presumption that counsel's performance falls within the 'wide range of professional assistance.'"

Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689). There

is in addition a strong presumption that counsel "exercised acceptable professional judgment in

all significant decisions made." Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466

U.S. at 689). However, that deference "is predicated on counsel's performance of sufficient

investigation and preparation to make reasonably informed, reasonably sound judgments."

Mayfield v. Woodford, 270 F.3d 915, 927 (9th Cir. 2001) (en banc).

2. Trial Counsel

Petitioner claims that his trial counsel rendered ineffective assistance due to

numerous alleged errors described in detail below. The California Superior Court denied

petitioner's claims of ineffective assistance of trial counsel, reasoning as follows:

> Petitioner has failed to demonstrate that counsel's decisions were
> anything other than trial tactics which are not reviewable on habeas
> corpus. Petitioner has therefore failed to set forth a prima facie
> case of ineffective assistance of counsel so far as these claims are
> concerned. (People v. Weaver, 26 Cal.4th 876, 29 P.3d 103, 111
> Cal.Rptr. 2d 2.)
>
> In addition, petitioner has failed to set forth any facts to either
> support his contentions or demonstrate prejudice as a result of
> counsel's actions. He has therefore failed to set forth a prima facie
> case for habeas corpus relief. (Strickland v. Washington (1984)

15

1    466 U.S. 668; People v. Weaver, supra; In re Bower, (1985) 38
     Cal.3d 865; 215 Cal.Rptr. 267, 700 P.2d 1269; People v. Jackson
2    (1980) 28 Cal.3d 264; 168 Cal.Rptr. 603, 618 P.2d 149; and In re
     Muszalski (1975) 52 Cal.App.3d 500, 125 Cal.Rptr. 286.)
3

4    (Answer, Ex. H.)

5              a.  Failure to Tape Record Interview with Ms. Pesout

6              Petitioner informs the court that his trial counsel interviewed Ms. Pesout prior to

7    trial and that her statements corroborated petitioner's version of the events in all respects.  (Pet.

8    at 6.)  However, according to petitioner, Ms. Pesout did not testify at trial "due to procedural

9    reasons."  (Id. at 6A.)  Petitioner claims that his trial counsel should have tape-recorded or had an

10   investigator present at his interview with Ms. Pesout in case she later became unavailable to

11   testify.  He argues, "Ms. Pesout's testimony was never heard as she was coerced into not

12   testifying and counsel was the only person who had heard her version and he could not put it

13   before the jury due to procedural reasons."  (Id.)

14             Petitioner raised this argument in his motion for new trial in state court.  (CT at

15   263.)  In that motion, petitioner advanced the following arguments:

16             During trial, a hearing was held pursuant to Evidence Code section
               402 (providing that a state trial court "may hear and determine the
17             question of the admissibility of evidence out of the presence or
               hearing of the jury"), during which time witness Jennifer Pesout
18             was questioned as to an interview she gave to Mr. Remlinger
               (petitioner's trial counsel).  Mr. Remlinger asked for the hearing in
19             order to establish that Ms. Pesout had told him in May or June of
               2000 that the leather jacket in which the contraband was located
20             had been in the back seat of her car before she picked up Defendant
               and that Defendant did not own the jacket or what was in its
21             pockets.  The District Attorney convinced the Court to allow him
               to impeach Ms. Pesout by presenting evidence that, some months
22             after the above-mentioned interview, Defendant had assaulted
               Witness Pesout and threatened her with further bodily injury.
23
               In granting the People's motion to impeach the witness, the judge
24             recognized that Ms. Pesout's interview with Mr. Remlinger would
               be admissible as a prior consistent statement.  Mr. Remlinger,
25             however, was unable to present testimony at either the 402 hearing
               or later at trial as to the content of Ms. Pesout's interview with him
26             because he did not have a third-party investigator present during

                                            16

1
2

> the interview.  He could not himself testify in the trial since he was
> Defendant's attorney, or at least he so concluded.  As a result, Mr.
> Remlinger decided not to present Ms. Pesout's testimony at all.

3
4
5
6

> By failing to have an investigator present when he interviewed a
> critical witness, Mr. Remlinger effectively eliminated the one
> independent witness who could testify to Defendant's innocence.
> He put himself in a position where he would have to testify and
> then argue his own credibility to the jury.  When he chose not to
> present Ms. Pesout at all, his actions removed a meritorious
> defense available to Defendant.

7   (Id. at 263-64.)  The trial court denied petitioner's motion for new trial, reasoning that his

8   counsel's decision not to call Ms. Pesout as a witness at trial was a tactical decision.  The trial

9   judge ruled as follows:

10
11
12
13
14
15

> Now the big evidence problem here probably is Ms. Pesout's –
> however that's is (sic) pronounced – testimony here.  Again, as
> pointed out by the DA here, that was a strategy decision on the part
> of Mr. Remlinger.  I don't see anything with respect to the decision
> he made that would justify the granting of a new trial on that.  He
> decided not to call her.  It was done because the district attorney
> did have some information that would again indicate perhaps her
> testimony was less than credible if she took the stand and testified
> as represented.  So that was purely a reasonable strategic decision
> on the part of counsel at the time.

16
17

> So I – I don't think his failure to have somebody else present while
> he interviewed her really was relevant to this issue and does not
> serve as a basis for granting a new trial.  So on that ground, court is
> going to deny the motion for a new trial.

18   (Reporter's Transcript (RT) at 429.)

19           The state court record reflects that after the trial court ruled Ms. Pesout could be

20   impeached with evidence of prior domestic violence and threats made by petitioner, petitioner's

21   trial counsel made the following statements:

22
23
24

> Your Honor, I guess my question would be in order for me to
> figure out what I want to do, I need to know whether my client
> wants to testify.  If he wants to testify, I would put him on the stand
> now, have him explain what occurred on April 3rd.

25
26

> And I probably will leave Ms. Pesout out of it, because I think that
> the – these subsequent acts are going to be enormously prejudicial
> to my client.  If he doesn't want to testify, then under those
> circumstances I will take my chances with Ms. Pesout.

(Id. at 210.)  Counsel's comments make it clear that his decision not to call Ms. Pesout as a witness resulted from his desire to avoid the prejudicial effect upon petitioner the impeachment evidence against her would likely have.  That strategic decision did not stem from counsel's decision to interview Pesout alone without recording her statement.  In other words, counsel would not have called Ms. Pesout to the stand even if he had independent verification of her interview statements.  Further, because petitioner testified to his version of the events, counsel's failure to record Pesout's statements had only a minor impact, if any, on petitioner's ability to present his case to the jury.  In this regard, petitioner's claim is directed primarily to trial counsel's tactical decision not to call Ms. Pesout as a witness because the risk of prejudice to petitioner outweighed whatever benefit her testimony might have had.  However, counsel's tactical decisions are "virtually unchallengeable."  Strickland, 466 U.S. at 687.  This court also notes that nothing in the record indicates petitioner's counsel could or should have known when he first interviewed Ms. Pesout that she would be unavailable at trial.  "In assessing prejudice, [a reviewing court] does not ask what a defendant might have done had he benefitted from clairvoyant counsel."  Weaver v. Palmateer, 455 F.3d 958, 966 (9th Cir. 2006).

The conclusion of the California Superior Court that petitioner failed to demonstrate either substandard performance or prejudice is not contrary to or an unreasonable application of Strickland.  Accordingly, petitioner is not entitled to relief on this claim.

### b.  Failure to Locate and Call Witnesses

Petitioner challenges the failure of his trial counsel to locate and call numerous witnesses at his trial.  He first claims that his trial counsel rendered ineffective assistance when he failed to "identify and present as a witness the person who sold Petitioner the police scanner just prior to Petitioner's arrest."  (Pet. at 6A.)  Petitioner claims that this person could have testified that the scanner "was not working, for more than a few seconds, on the day of Petitioner's arrest;" that the batteries on the scanner were "weak," that "an operational problem existed on that day" and that petitioner was not "actively seeking to purchase a scanner and the

18

1   fact that it was in the vehicle was not to facilitate the transportation, or possession for sale of

2   marijuana." (Id.)  Petitioner also claims that his trial counsel should have called: (1) witnesses

3   who saw petitioner before he entered Ms. Pesout's vehicle, who could have testified that he was

4   not wearing or carrying the leather jacket; (2) witnesses who could have testified that petitioner

5   "had never worn the leather jacket in question in all the time they had known him;" (3) witnesses

6   who had seen the actual owner of the leather jacket wearing it "in close proximity to the time it

7   was discovered in Ms. Pesout's vehicle;" (4) an electronics expert to testify that the scanner was

8   broken or defective, or to explain whether it could have become "recharged" after being in police

9   custody; and (5) witnesses who would have known whether petitioner owned a scale. (Id. at 6A-

10  6B.).  Petitioner's suggestions as to the possible substance of testimony from these proposed

11  unnamed witnesses are not substantiated by the state court record or by anything contained in

12  petitioner's filings in this court.

13          Even assuming arguendo that defense counsel's failure to locate and call the

14  unnamed witnesses listed above was outside "the wide range of professionally competent

15  assistance" that the Sixth Amendment requires, petitioner has failed to demonstrate prejudice.  At

16  most, petitioner appears to be arguing that further investigation and interviews may possibly have

17  turned up helpful evidence.  Any such contention is insufficient to establish prejudice.  See Dows

18  v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (to establish that counsel was ineffective for failing

19  to produce a witness at trial, a habeas petitioner must provide "evidence that this witness would

20  have provided helpful testimony for the defense," such as an affidavit from the alleged witness);

21  Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim

22  denied where he presented no evidence concerning what counsel would have found had he

23  investigated further, or what lengthier preparation would have accomplished); United States v.

24  Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of

25  ineffectiveness claim because he offered no indication of what potential witnesses would have

26  /////

19

1  testified to or how their testimony might have changed the outcome of the hearing).

2  Accordingly, petitioner is not entitled to relief on these claims.

3                    c.  Failure to Conduct Investigation

4        Petitioner also claims that his trial counsel failed to conduct a reasonable

5  investigation of his case.  Specifically, he contends that counsel improperly failed to: (1) locate

6  the leather jacket and have it tested to determine the true owner of the jacket and to establish that

7  petitioner was not the owner; (2) "show that due to Ms. Pesout's suspended driver's license that

8  Ms. Pesout rarely used the vehicle and should have known who the regular operator was, or who

9  was the most logical suspect for leaving the contraband in the vehicle;" and (3) have the scale

10  and baggies tested for fingerprints.  (Pet. at 6B-6C.)

11        Petitioner has failed to demonstrate prejudice with respect to these claims of

12  ineffective assistance.  Petitioner's unsupported claim that the result of further investigation into

13  these areas would have led to a different verdict is insufficient to establish prejudice.  See

14  Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("presentation of conclusory allegations

15  unsupported by specifics is subject to summary dismissal"); Villafuerte, 111 F.3d at 632; Jones v.

16  Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not supported by

17  a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg, 24 F.3d 20,

18  26 (9th Cir. 1994)).  This court cannot say that counsel's failure to conduct investigation into

19  these areas suggested by petitioner "render[ed] the result of the trial unreliable or the proceeding

20  fundamentally unfair."  Lockhart v. Fretwell, 506 U.S. 364, 372 (1993).  Accordingly, petitioner

21  is not entitled to relief on these claims.

22                    d.  Failure to Object to the Mishandling/Destruction of Evidence

23        Petitioner claims that his trial counsel rendered ineffective assistance by failing to

24  "object to the state's mishandling/destruction of evidence – which kept the leather jacket from

25  being before the jury, and had Petitioner kept the jacket and attempted to present it as evidence,

26  the state would have objected that it was not the same jacket that the marijuana was found in."

1   (Pet. at 6C.)  The leather jacket was not destroyed or lost.  Rather, as conceded by petitioner and

2   as reflected by the record, the leather jacket was returned to petitioner after his arrest.  (Pet. at 6E;

3   RT at 151, 227.)  As explained below in more detail, there is no evidence that the leather jacket

4   was mishandled by the prosecution.  Accordingly, counsel's failure to "object" on this basis did

5   not constitute ineffective assistance.

6                    e.  Failure to Be Truthful with Petitioner

7               Petitioner contends that because of trial counsel's "failure to be truthful,"

8   petitioner was forced to file two motions for substitute counsel.  (Pet. at 6B-6C.)   Specifically,

9   petitioner states that his trial counsel: (1) told petitioner that if Ms. Pesout testified the District

10  Attorney would take her children away from her and make her life miserable, thereby joining

11  with the state "in the coercion of a defense witness to deprive Petitioner of a defense;" (2) made

12  untrue statements to petitioner about Ms. Pesout in an attempt to "drive a wedge between

13  Petitioner and the main witness who could prove his innocence;" and (3) attempted to undermine

14  petitioner's defense in retaliation for petitioner's attempts to "fire him."  (Id. at 6C.)  These vague

15  and unsupported allegations do not establish that counsel rendered ineffective assistance or that

16  petitioner suffered prejudice as a result thereof.  See Jones, 66 F.3d at 204; James, 24 F.3d at 26.

17  Accordingly, petitioner is not entitled to relief on these claims.[4]

18  _____

19       [4]  In the traverse, petitioner states that he made continuous requests to the trial court for
    substitute counsel, pursuant to People v. Marsden, 2 Cal. 3d 118 (1970).  (Traverse at 15.)
20  Petitioner explains that he "voiced a variety of objections," including that his counsel "had
    promised certain things in the case which had not been done, including filing a motion to strike
21  the prior serious felony allegations facing petitioner."  (Id.)  Petitioner states that there was a
    "complete breakdown in the attorney-client relationship" and that the court "should have relieved
22  petitioner's counsel and appointed another attorney."  (Id.)  This claim is not contained in the
    petition.  To the extent petitioner is attempting to belatedly raise a new claim in this manner, it
23  must be rejected.  See Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (a traverse is
    not the proper pleading to raise additional grounds for relief); see also Greenwood v. Fed.
24  Aviation Admin., 28 F.3d 971, 977 (9th Cir. 1994) ("we review only issues which are argued
    specifically and distinctly in a party's opening brief").  Even if this claim had been properly
25  raised, petitioner has failed to demonstrate a constitutional violation.  Petitioner's Marsden claim
    is stated in cursory fashion, with no specific reference to the trial court record and without a
26  sufficient explanation of the facts surrounding the claim.  Although the record reflects that
    petitioner made two Marsden motions (see RT at 1, 57), the transcripts of these motions were

                                          21

3. <u>Appellate Counsel</u>

Petitioner claims that his appellate counsel rendered ineffective assistance by failing to raise on appeal the following claims: (1) the trial court erred when it ruled that Ms. Pesout could be impeached with statements she made about the domestic violence incident involving petitioner; (2) the trial court erred when it denied petitioner's motion to suppress; (3) the trial court erred when it denied petitioner's motions to substitute counsel; (4) petitioner's constitutional rights were violated because he was clothed in "jail attire" during trial; (5) the trial court erred when it concluded that the leather jacket and baggies of marijuana need not be presented in court; and (6) the trial court erred when it denied petitioner's motion to strike a prior conviction for purposes of sentencing.  (Pet. at 6D; Traverse at 17.)  Petitioner does not elaborate on these claims, explain how they are meritorious, or offer any explanation as to why his appellate counsel should have raised these claims instead of, or in addition to, those he raised on appeal.  For this reason alone, petitioner's claims in this regard should be rejected.  <u>See</u> <u>Jones</u>, 66 F.3d at 204; <u>James</u>, 24 F.3d at 26.  Relief as to this claim should also be denied on the merits.

The <u>Strickland</u> standards apply to appellate counsel as well as trial counsel.  <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986); <u>Miller v. Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  <u>Jones v. Barnes</u>, 463 U.S. 745, 751

---

sealed and have not been lodged with this court.  (<u>Id.</u>)  Petitioner has provided insufficient support for his claim that a request for substitute counsel was improperly denied and his allegations do not satisfy the specificity requirement.  <u>See Jones</u>, 66 F.3d at 204.  In addition, as is clear from the record, the trial court allowed petitioner on two occasions to fully express his complaints about his trial counsel.  That is all that is constitutionally required.  <u>See Schell v. Witek</u>, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc) ("the Sixth Amendment requires on the record an appropriate inquiry into the grounds of such a motion, and that the matter be resolved on the merits before the case goes forward"); <u>Hudson v. Rushen</u>, 686 F.2d 826, 829 (9th Cir. 1982) ("Thus, the state trial court's summary denial of a defendant's motion for new counsel without further inquiry violated the Sixth Amendment.")  For these reasons, even if petitioner's <u>Marsden</u> claim had been properly presented to this court, it should be rejected.

1   (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the

2   ability of counsel to present the client's case in accord with counsel's professional evaluation

3   would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th

4   Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is

5   not even particularly good appellate advocacy.")  There is, of course, no obligation to raise

6   meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a

7   showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing

8   to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this

9   context, petitioner must demonstrate that, but for counsel's errors, he probably would have

10  prevailed on appeal.  Id. at 1434 n.9.

11         On appeal, petitioner's counsel raised three claims: the jury was erroneously

12  instructed with CALJIC No. 17.41.1; jury misconduct violated petitioner's Sixth Amendment

13  confrontation rights; and petitioner's motion for new trial based on jury misconduct was

14  erroneously denied.  (Answer, Ex. D at 2.)  These claims were rejected by the California Court of

15  Appeal in a lengthy opinion that was certified for partial publication.  This fact indicates that the

16  claims raised by petitioner's appellate counsel were significant and meritorious.  On the other

17  hand, petitioner has failed to show that he would have prevailed on appeal on the other claims he

18  suggests appellate counsel should have raised.  Specifically, petitioner has not demonstrated that

19  the trial court's decision to allow Ms. Pesout to be impeached with evidence of her prior

20  statements, its ruling on petitioner's motion to suppress evidence, its decision that the leather

21  jacket and baggies of marijuana were not required to be produced in court, and its ruling on

22  petitioner's motion to strike his prior conviction were erroneous, rendered his trial fundamentally

23  unfair, or otherwise violated his right to due process.

24         As for petitioner's claim that his appellate counsel was deficient in failing to raise

25  the issue of how he was clothed when appearing before the jury at trial, it is true that a defendant

26  in a criminal case may not be compelled to appear in front of the jury wearing identifiable prison

garb. Estelle v. Williams, 425 U.S. 501, 503, 512 (1976); United States v. Rogers, 769 F.2d

1418, 1423 (9th Cir. 1985). However, a criminal defendant may choose to dress in jail clothes.

See Felts v. Estelle, 875 F.2d 785, 786 (9th Cir. 1989); Estelle, 425 U.S. at 512-13. Petitioner

has failed to demonstrate, or even to allege, that he was forced to appear in prison clothing during

trial, in violation of his constitutional rights. Lastly, as discussed above, petitioner has failed to

demonstrate that the trial court erred when it denied petitioner's motions to substitute counsel.

 Appellate counsel's decision to press only claims that he believed, in his

professional judgment, had more merit that the claims suggested by petitioner was "within the

range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397

U.S. 759, 771 (1970). For these reasons, the state court determination with regard to petitioner's

claim of ineffective assistance of appellate counsel was not contrary to, or an unreasonable

application of Strickland. Accordingly, petitioner is not entitled to relief on this claim.

 D. Prosecutorial Misconduct

 Petitioner claims that the prosecutor committed misconduct because he failed to

conduct appropriate testing of the scale, jacket, and baggies found in Ms. Pesout's car. Petitioner

contends that such tests would have established that he did not own these items. Specifically,

petitioner alleges:

> No attempt was made to lift fingerprints from the scale, baggies, or
> leather jacket – nor was any attempt made to preserve fingerprint
> evidence by police during the course of their investigation and
> therefore that evidence was unavailable to show that had
> fingerprint evidence been taken it would have belonged to
> someone other than Petitioner, as Petitioner did not own the leather
> jacket where the marijuana and scale were allegedly found
> according to officer Ribota, nor did Petitioner have knowledge or
> ownership of marijuana or a scale on April 3, 2000.

(Pet. at 6E.) Petitioner also contends that the police did not conduct tests on the jacket, baggies

and scale because petitioner was an "exfelon." (Traverse at 18.) Petitioner raised this claim in

petitions for a writ of habeas corpus filed in the California Superior Court, California Court of

/////

1 Appeal, and California Supreme Court.  (Answer, Exs. G, I, K.)  In all of these courts, the claim

2 was summarily denied.  (Answer, Exs. H, J, L.)

3    "A defendant's due process rights are violated if prosecutorial misconduct renders

4 a trial 'fundamentally unfair.'"  <u>Drayden v. White</u>, 232 F.3d 704, 714 (9th Cir. 2000) (quoting

5 <u>Darden v. Wainwright</u>, 477 U.S. 168, 183 (1986)).  According to the Supreme Court, "the

6 touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of

7 the trial, not the culpability of the prosecutor."  <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982).

8 Thus, the federal habeas court must distinguish between "ordinary trial error of a prosecutor and

9 that sort of egregious misconduct . . . amount[ing] to a denial of constitutional due process."

10 <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 647-48 (1974).

11    Petitioner has failed to make the required showing in support of his claim of

12 prosecutorial misconduct.  The state court record reflects, and petitioner concedes, that the

13 leather jacket was returned to him after his arrest.  (Pet. at 6E; RT at 151, 227.)  The marijuana

14 found in the jacket was tested by the prosecution and then placed in a secured vault.  (<u>Id.</u> at 161.)

15 The prosecutor conceded that he had not tested any of these items for fingerprints.  (<u>Id.</u> at 152.)

16 At the end of trial, petitioner's counsel made an oral motion to dismiss based on the prosecutor's

17 failure to produce the marijuana and leather jacket at trial.  (<u>Id.</u> at 225.)  The prosecutor

18 responded that he did not "think there's any reason why [he] had to bring the marijuana in to

19 show it's marijuana," and that he chose, instead, to rely on witness testimony to establish the

20 ownership of the jacket, the nature of the substance found in the baggies, and the chain of

21 custody of these items.  (<u>Id.</u> at 226-28.)  The trial judge denied the motion to dismiss because he

22 couldn't "think of any rule that requires that they actually physically bring the dope or anything

23 else here to the courtroom."  (<u>Id.</u> at 228.)

24    Petitioner has failed to demonstrate that the prosecutor engaged in misconduct by

25 not fingerprinting the jacket, baggies, and scale.  The prosecutor explained that he chose to rely

26 on witness testimony to establish that petitioner owned the jacket and possessed the marijuana

1    and scales found in its pockets.  This decision was reasonable under the circumstances of this

2    case and did not constitute egregious misconduct rendering petitioner's trial fundamentally

3    unfair.  Petitioner does not allege that the prosecutor knowingly presented false testimony

4    regarding the ownership of the jacket and other items, nor could he.  There appears to be no

5    evidence that petitioner did not own the jacket.  Certainly there is no evidence that the prosecutor

6    knew petitioner did not own the jacket or had any doubts about its ownership or its contents.

7    Petitioner's allegation that a test for fingerprints would have established that he did not own the

8    items in question is based on pure speculation and does not establish a constitutional violation.

9    See Jones v. Gomez, 66 F.3d at 204; James v. Borg, 24 F.3d at 26.  In short, there is no evidence

10   of misconduct or prejudice.  Accordingly, petitioner is not entitled to relief on his claim of

11   prosecutorial misconduct.[5]

12        E.  Evidentiary Hearing

13             Petitioner requests an evidentiary hearing on his claims.  (Traverse at 18.)

14   Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an evidentiary

15   hearing must first determine whether a factual basis exists in the record to support a petitioner's

16   claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme,

---

17

18        [5]  Throughout his petition and traverse, petitioner claims that he is actually innocent of the
     charges against him.  (Answer at 17 n.6; see also Pet. at 6C.)  Assuming arguendo that petitioner
19   is making a freestanding claim of actual innocence, it should be rejected.  In Herrera v. Collins, a
     capital case, a majority of the Supreme Court assumed without deciding that the execution of an
20   innocent person would violate the Constitution.  A different majority of the Supreme Court
     explicitly so held.  Compare 506 U.S. at 417 with 506 U.S. at 419 and 430-37.  See also House v.
21   Bell, ___ U.S. ___, 126 S. Ct. 2064, 2084 (2006) (declining to resolve whether federal courts
     may entertain claims of actual innocence but concluding that the petitioner's showing of
22   innocence in that case fell short of the threshold suggested by the Court in Herrera); Jackson v.
     Calderon, 211 F.3d 1148, 1164 (9th Cir. 2000); Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir.
23   1997) (en banc).  Although the Supreme Court did not specify the standard applicable to this type
     of "innocence" claim, it noted that the threshold would be "extraordinarily high" and that the
24   showing would have to be "truly persuasive."  Herrera, 506 U.S. at 417.  See also Carriger, 132
     F.3d at 476.  The Ninth Circuit has determined that in order to be entitled to relief on such a
25   claim a petitioner must affirmatively prove that he is probably innocent.  Jackson, 211 F.3d at
     1165; Carriger, 132 F.3d at 476-77.  Even assuming arguendo that a freestanding claim of
26   innocence may be maintained in this non-capital case, petitioner has failed to make the required
     showing.  Accordingly, relief as to any such claim should be denied.

1    187 F.3d 1075, 1078 (9th Cir. 1999).  <u>See</u> <u>also</u> <u>Earp v. Ornoski</u>, 431 F.3d 1158, 1166 (9th Cir.

2    2005; <u>Insyxiengmay v. Morgan</u>, 403 F.3d 657, 669-70 (9th Cir. 2005).  He must also "allege[]

3    facts that, if proved, would entitle him to relief."  <u>Schell v. Witek</u>, 218 F.3d 1017, 1028 (9th Cir.

4    2000).  Petitioner has not demonstrated that any additional facts need to be determined in order to

5    resolve the claims raised in the instant petition.  Further, this court has determined that relief as

6    to petitioner's claims should be denied on the merits because the state court's decision was not

7    contrary to, or an unreasonable application of, clearly established federal law or based on an

8    unreasonable determination of the facts.  Accordingly, an evidentiary hearing is not warranted on

9    petitioner's claims.  <u>See</u> <u>Williams</u>, 529 U.S. at 445; <u>Earp</u>, 431 F.3d 1166.

10           For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's

11   application for a writ of habeas corpus be denied.

12           These findings and recommendations are submitted to the United States District

13   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14   days after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17   shall be served and filed within ten days after service of the objections.  The parties are advised

18   that failure to file objections within the specified time may waive the right to appeal the District

19   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

20   DATED: November 2, 2006.

21

22                                                    _____

23                                                    DALE A. DROZD
                                                      UNITED STATES MAGISTRATE JUDGE
24

25   DAD:8:baldine533.hc

26

                                                    27